# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Gregory L. Stewart, | : | Case No. 1:07CV0659 |
| | : | |
| Plaintiff | : | Judge Kathleen O'Malley |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendant | : | |

This Court has mixed feelings regarding this action in which the complaint alleges that the plaintiff is seeking judicial review pursuant to 42 U.S.C. §1383(c)(3) of the defendant's final determination denying his claim for supplemental security income (SSI), 42 U.S.C. §1381 et seq.[1] That final determination is represented by a decision entered August 21, 2006 by an Administrative Law Judge (ALJ) upon de novo review.[2]  On the one hand, this Court believes that the ALJ committed a fundamental error, which requires vacating the defendant's final determination and

---

[1]There is something very puzzling in this regard.  The SSI application which underlies this action was filed on February 19, 2004, alleging an onset date of disability of November 15, 1999.  At the same time an application for disability insurance benefits (DIB), 42 U.S.C. §§416(i), 423, alleging the same onset date, was filed (R. 58).  Inexplicably the DIB claim simply seems to have disappeared.  The state agency determination only references an SSI claim (R. 18-19).When the matter came on de novo review it was alluded to as only an SSI claim, and plaintiff's counsel never mentioned it as a DIB claim.  The defendant's final determination only references an SSI claim.  What became of the DIB claim is a mystery to this Court.  At the de novo hearing plaintiff's counsel stipulated to an amended onset date of February 19, 2004, the filing date of the SSI claim which would be the earliest date from which an SI award could be effectuated.

The plaintiff had previously applied for SSI on December 6, 2002, alleging the 1999 onset date, and that application ended with denial at the state agency level on January 28, 2003.  Much of the medical evidence in this record was generated in conjunction with the 2002 application.

[2]The ALJ's decision became the defendant's final determination upon denial of review by the Appeals Council January 20, 2007.

remand for further proceedings.  On the other hand, this Court also believes that this may well be an exercise in futility, doing nothing more than giving the plaintiff false hope that he will be awarded the benefits he seeks.

The plaintiff was born on September 1, 1962, which places him in the category of a younger individual under the Medical-Vocational Guidelines, Section 200.00(h), Appendix II, Subpart P, Part 404, 20 C.F.R., and he has a GED.  This being so he would have to be restricted to less than a wide range of sedentary work in order to be deemed disabled.

At the de novo evidentiary hearing[3] the plaintiff maintained that he suffers from low back pain which radiates into his right leg, which is at an incapacitating level.  He also stated that he suffers from anxiety and depression, as a result of which he does not like to be around people, and gets irritated and angry with others—"I don't know, I kind of think people are out to get me."—so he just stays home with his fiance and their child.

In his decision the ALJ found the plaintiff exertionally capable of performing the full range of light work, which subsumes the ability to perform sedentary work.  This Court believes that such determination was within the ALJ's "zone of choice" see, Mullen Bowen, 800 F.2d 535, 545 (6th Cir. 1986), under the substantial evidence standard of Richardson v. Perales, 402 U.S. 389 (1971).

In arguing that the ALJ erred in this regard plaintiff places considerable reliance upon a "Medical Opinion Re: Ability To Do Work Related Activities (Physical)" form completed by a treating physician, Dr. Adam Schaaf on February 22, 2006, which does support the plaintiff's claim of disability.

As found by the ALJ, there are problems with this evidence.

---

[3]The hearing was held by video conference, with the plaintiff and his counsel being in Cleveland and the ALJ and a vocational expert being in San Diego, California.

To begin with, barely three months earlier Dr. Schaaf completed a "Physician Certification of Medication Dependency for the Disability Assistance Program," form in which he stated that the plaintiff's physical limitation was "He is not able to lift heavy weights," a far cry from what he had to say in February 2006 with no evidence of a change in the plaintiff's condition over the intervening period.

Next, as concluded by the ALJ, Dr. Schaaf's patient notes do not contain objective findings which would correlate to extreme limitations.  His records contain an MRI exam performed in June 2005 which only reflected a minimal disc bulge at L4-L5 with no significant foraminal compromise.

When the plaintiff underwent an EMG study at the direction of  Dr. J. Patrick Flanagan in March 2006 the test results were "totally normal."  Dr. Flanagan's patient note reads, in part, "Discussed with the patient where he has his bulging disc and does not fit with his clinical symptoms.  We did have a long discussion about his EMG results and the fact that this was normal and what this essentially means."

There is also the report of a consultative examination performed by Dr. Parduman Singh in April 2004 to be taken into account.  Dr Single's report concludes:

> In summary, Mr. Stewart has chronic low back pain and he may have some element of lumbar and sacroiliac arthritis on the right side. There was no clear pattern of lumbosacral radiculopathy and there appears to be some functional process, especially the pattern of sensory deficit effecting the right half of the body with no explainable organic basis.

X-rays of the lumbar spine performed in conjunction with that evaluation were normal.

The difficulty this Court has with the ALJ's decision pertains to his assessment of the plaintiff's mental/emotional status as not constituting a "severe impairment."

This record plainly reflects that the plaintiff does suffer from some degree of a psychological

impairment.

The plaintiff sought counseling at Valley Counseling Services in April 2004.  Upon intake he was diagnosed as suffering from depressive disorder, and assigned a current GAF of 50, which connotes "serious symptoms" including serious impairment in occupational functioning.  In January 2006 he went to the Portage Path Behavioral Health facility, a public health agency, and upon intake was diagnosed as suffering from "Bipolar Disorder, Type I, Most Recent Episode, Depressed [and] Posttraumatic Stress Disorder."  The current GAF rating was 52, the lower end of "moderate symptoms" reflecting moderate difficulty in occupational functioning."

The controlling standard in this circuit as to what constitutes a severe impairment is found in Salmi v. Secretary of Health and Human Services, 774 F.2d 685, 691-692 (6th Cir. 1985), in which the court held:

> ...An impairment qualifies as non-severe only if the impairment would not affect a claimant's ability to work regardless whether the claimant was sixty years old or only twenty-five, whether the claimant has a sixth grade education or a master's degree, whether the claimant was a brain surgeon, a factory worker, or a secretary.  We hold that an impairment qualifies as non-severe only if, regardless of a claimant's age, education, or work experience, the impairment would not affect the claimant's ability to work.

In this Court's opinion the assessments of the plaintiff's psychological state by the two mental health professionals is sufficient to satisfy the de minimis Salmi standard of a severe impairment.

This Court rejects the ALJ's rationale for finding to the contrary, that being "In choosing not to appear at least three scheduled follow-up appointments for mental health evaluation and treatment between February 6, 2006 and March 9, 2006, the claimant has demonstrated that her [sic] alleged disabling mental symptoms are not as severe as she [sic] maintains."  Even if that was so, it does not

take those symptoms out of the "severe impairment" category under <u>Salmi</u>.

Therefore, ths court is constrained to conclude that the defendant's final determination must be reversed, and this matter remanded to the defendant for a determination as to the impact of the plaintiff's psychological status upon his ability to engage in substantial gainful work activity.[4]  It is, accordingly, recommended that an order of remand be entered pursuant to the fourth sentence of 42 U.S.C. §405(g).

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:   December 14, 2007

**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[4]Quite honestly, if this Court was making that determination as a matter of first impression it is extremely doubtful that this court would conclude that the plaintiff's mental state is preclusive of all employment.  That, however, is not this Court's call upon judicial review, and an ALJ must be the one to make that determination in the first instance, perhaps aided by the testimony of a mental health medical expert.

5